UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BEN H. SCOTT (#94592)

VERSUS                                              CIVIL ACTION

LT. COL. TODD BARRERE, ET AL          NUMBER 13-524-SDD-SCR

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, July 3, 2014.

                                  STEPHEN C. RIEDLINGER
                                  UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BEN H. SCOTT (#94592)

VERSUS                                                               CIVIL ACTION

LT. COL. TODD BARRERE, ET AL          NUMBER 13-524-SDD-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the plaintiff's Summary Judgment Motion Federal Rule—56, Fed.R.C.Proc. and the Defendants' Motion for Summary Judgment. Record document numbers 28 and 26, respectively.

Pro se plaintiff, an inmate confined at Hunt Correctional Center, St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Col. Todd Barrere and Lt. Andrew Palermo. Plaintiff alleged that he was subjected to an excessive use of force in violation of his constitutional rights.

Plaintiff moved for summary judgment relying on copies of his medical records and the affidavits of inmates Cortez Denson, Michael Bernard, John Hall and Gregory Walker.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Lt. Andrew Palermo, Lt.Col. Todd Barrere, Col. Betty Johnson and Dr. Jonathan Roundtree, copies of disciplinary reports and a Warden's Unusual Occurrence Report issued on April 24, 2013, Administrative Remedy Procedure ("ARP")

EHCC-2013-322, Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Offenders dated August 2008, Elayn Hunt Correctional Center Institutional Policy 300-A01 and Department Regulation No. C-02-006 dated December 20, 2010.

**I. Applicable Law**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id*., at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of

3

causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, *supra*; *Whitley v. Albers*, *supra*. A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

There is conceptual distinction between the *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). To prevail on an Eighth Amendment excessive force claim, the plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and that he suffered an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000. The absence of serious injury, while relevant to the inquiry, does not preclude relief. The Fifth Circuit Court of Appeals has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an Eight Amendment excessive force claim. *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).

4

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve the defendants of liability for using excessive force. *See Wilkins*, 539 U.S. at 38, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is considered in conjunction with the other *Hudson* factors to help determine whether the force used was excessive. *See Brown,* 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" quoting *Whitley*, 475 U.S. 321, 106 S.Ct. 1085).

**II. Analysis**

Plaintiff alleged that he was subjected to an excessive use of force after he made a face at Lt. Col. Barrere. Specifically, the plaintiff alleged that on April 24, 2013, he was being interviewed by the Working Cellblock Review Board which consisted of Col. Betty Johnson, Lt.Col. Barrere and classification officer Jeffery Gladney. Plaintiff alleged that classification officer Gladney

5

told the plaintiff, "You're going to talk your way out of the Board." Plaintiff alleged that while trying to explain to Col. Johnson the circumstances surrounding a prior disciplinary report, Lt.Col. Barrere stated, "You haven't shut up yet? Pass me his folder and he's denied." Plaintiff alleged that because he met all of the requirements for release from extended lockdown, he "drew a dis-satisfied look" on his face and left the room. Plaintiff alleged that when he reached the tier, Lt.Col. Barrere came up from behind him and accused the plaintiff of calling him a "red-neck motherf***er." Plaintiff alleged that he asked Lt. Col. Barrere why he was making the false accusation and Lt. Col. Barrere responded that he had heard the plaintiff call him that name.

Plaintiff alleged that Lt. Col. Barrere called Lt. Palermo and instructed the lieutenant to escort the plaintiff to administrative segregation. Plaintiff alleged that Lt. Palermo ordered him to place his hands behind his back and he complied. Plaintiff alleged that in order to impress Lt. Col. Barrere, Lt. Palermo shouted at the plaintiff, "I told you to put your hands behind your back!" Plaintiff alleged at that moment Lt. Col. Barrere joined Lt. Palermo in violently jerking the plaintiff's right arm, seriously injuring his right elbow.

Plaintiff offered the affidavit of John Hall in support of his summary judgment motion. According to Hall, on the date of the

6

incident he was working as an orderly on Beaver-4 lobby.[1]  Hall stated that he observed Lt. Col. Barrere and Lt. Palermo jerking the plaintiff's arm in a violent manner.[2]  In addition, the plaintiff offered the affidavit of Gregory Walker, another inmate orderly who was working in the lobby at the time of the incident.[3]  According to Walker, he observed the plaintiff standing with his hands behind his back near the entrance to Beaver-4 lobby.[4]  Walker stated that he observed Lt. Col. Barrere and Lt. Palermo jerk the plaintiff's arm "up in a rough position."[5]

    Defendants offered a different version of the incident. Defendants contend that on the day of the incident the Review Board determined that the plaintiff did not meet the requirements to be transferred to a working cell block because he had been issued a disciplinary report within the 90 day period prior to the date of the review board.  Defendants contend that as the plaintiff rushed out of the board room the plaintiff called Lt.Col. Barrere a "redneck motherf***er."

    Defendants contend that Lt.Col. Barrere contacted Lt. Palermo by radio and told him to place the plaintiff in administrative

---

[1] Record document 28-1, p. 3.

[2] *Id.*

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.*

segregation for a Rule 3 disciplinary infraction.

Defendants contend that Lt. Palermo proceeded to Beaver 4 Lobby where he found the plaintiff and ordered him to place his hands behind his back to be restrained. Defendants contend that the plaintiff refused to comply and deliberately attempted to turn around towards Lt. Palermo. Defendants contend that Lt. Palermo used a minimal amount of force to place the plaintiff against the lobby wall and to secure handcuffs on him.

Defendants deny that Lt. Col. Barrere was present during the incident or that he applied any force on the plaintiff. Defendant Lt. Palermo asserted that he applied only the amount of force necessary to gain control over the plaintiff. Defendants contend that the incident was over in just a few minutes, and that the plaintiff did not sustain injuries consistent with the amount of force he alleged was used or would be suggestive of an excessive use of force.

Defendants argued that because there is no objective medical evidence to support a finding that the plaintiff sustained more than a *de minimis* injury as a result of the alleged use of force, they are entitled to summary judgment as a matter of law.

Plaintiff's medical records showed that on April 24, 2013, the plaintiff was examined by medical personnel after the use of

force for complaints of right elbow pain.[6] Plaintiff's medical records showed that the plaintiff's right elbow had minor swelling and was tender to touch and had limited range of motion.[7] X-rays were ordered and Ibuprofen was provided.[8]

Plaintiff sought medical treatment for complaints of elbow pain on April 30,[9] May 8,[10] May 12,[11] May 22,[12] June 11,[13] June 28,[14] September 10,[15] September 16,[16] September 26,[17] and November 4, 2013.[18] Following an MRI, the plaintiff was diagnosed with right elbow tendinitis.[19]

Dr. Roundtree's summary judgment affidavit, stating that the

---

[6] Record document number 26-9, p. 14.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 15.

[10] *Id.* at 16.

[11] *Id.* at 18.

[12] *Id.* at 19.

[13] *Id.* at 20.

[14] *Id.* at 22.

[15] *Id.* at 25.

[16] *Id.* at 27.

[17] *Id.* at 30.

[18] *Id.* at 42.

[19] *Id.* at 42, 43.

plaintiff sustained only a minor strain of his right elbow, directly contradicts the plaintiff's allegation of serious injury. But even if the medical records show that the plaintiff could prove only that he suffered a minor strain of his right elbow, this is not per se a *de minimis* injury.

At the time of the alleged incident, a reasonable corrections officer would have known that violently jerking the plaintiff's arm without provocation was not objectively reasonable. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986) (force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline). There are also significant material facts in dispute regarding the remaining *Hudson* factors, i.e., need for the application of any force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need. *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999. Resolution of these disputed factual issues will depend on the credibility of the witnesses and weighing of the evidence. When ruling on a motion for summary judgment, the court cannot make credibility determinations nor weigh the evidence.

**<u>RECOMMENDATION</u>**

It is the recommendation of the magistrate judge that the plaintiff's Summary Judgment Motion Federal Rule—56, Fed.R.C.Proc. and the Defendants' Motion for Summary Judgment, each be denied and that this matter be referred back to the magistrate judge for further proceedings.

Baton Rouge, Louisiana, July 3, 2014.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE